## OF THE

# STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,

### AND PREROGATIVE COURT

### JUNE TERM, 1887.

---

WILLIAM WARWICK, appellant,

*v.*

ANNA LAWRENCE, respondent.

If a married woman consents to the application of her money to the payment of the debts of her husband, or those of any other person, she cannot reclaim such moneys. Her executory contracts of such a nature cannot be enforced, but she cannot rescind the transaction after its execution.

---

On appeal from a decree founded on the following conclusions filed by Vice-Chancellor Bird.

The complainant alleges that in 1873 she appointed the defendant her agent to collect moneys due to her, and that about

179

June 7th of that year he collected for her $952.33, and that he was authorized to hold that money in trust for her until the final determination of a suit in chancery between herself and her husband as complainants, and one Emson as defendant, and that that suit was finally determined in 1880 in favor of the complainants therein, and that thereby the said $952.33 became and was due to the said complainant in this suit.

There is no doubt about the defendant receiving the said $952.33 at the time stated; but the answer to the bill is that this complainant and her husband agreed in writing, under their hands, that Warwick should retain from the first moneys he should receive for them a sufficient amount to pay him for all moneys loaned or advanced by him to and for them or either of them, and that he loaned to the complainant and to her husband large sums of money at various times, so that at the time he received the $952.33 for the complainant they (the complainant and her husband) were indebted to him about $1,200. In confirmation of the truthfulness of this alleged liability of the complainant it is further alleged in the answer that she made a settlement with the defendant on that basis, and offered a note for the difference, which was refused because worthless.

Witnesses have been examined to establish this defence, but however successful in the attempt to prove the allegation of the money advanced and paid, the law determines the case, as to a large proportion of the money so paid, against the defendant. The defendant cannot charge the separate estate of the wife with the debts of the husband, even though the money be advanced upon an express promise in writing by her to pay out of a particular fund. This is now the provision of our statute, and it was the law in this state before the legislature so declared. I refer to *Perkins* v. *Elliot, 7 C. E. Gr. 127; S. C. on appeal, 8 C. E. Gr. 526; Peake* v. *La Baw, 6 C. E. Gr. 269; Armstrong* v. *Ross, 5 C. E. Gr. 109; Van Kirk* v. *Skillman, 5 Vr. 109.*

But the defendant swears that he paid money for clothing and for house-rent for the complainant under the agreement referred to; to this extent the fund should be charged. He swears that

he kept an account of these items in a book, which book he cannot find. He remembers that the aggregate sum was about $175. He remembers that one item was $22, one between $9 and $10, and one $65. This last was cash handed to a son of the complainant, but to what purpose it was put beyond that does not appear. The rent he paid was $80. These several sums make $177, or $2 more than the defendant thinks the total amount of the book account. But the $65 must be dropped, for the complainant cannot be charged with the advance made to her son. I will charge her with $80 for rent, $22 for dress goods and $9.50 for shoes, in all, $111.50. Deducting this from the $952.-33, the balance is $840.83. This was received in June, 1873. I do not charge him with interest until April 1st, 1874, then I charge him with interest at the rate of seven per cent. for four years, making $235.40, and from thence at the rate of six per cent. (the time being eight years and two months), making $411.-92; the principal and interest being $1,490.75.

The defendant also urges the statute of limitations as a bar to this claim. This is unavailing. He admits that he undertook to receive and to hold these funds for the complainant, and that he did receive them and has never disbursed them except as above stated. If the transaction did not so strongly partake of the nature of a trust, the acknowledgment the defendant makes would be very likely to justify a court of equity in giving the complainant a decree.

I will advise that the complainant is entitled to a decree for said sum of $1,490.75 and costs.

*Mr. A. G. Richey*, for appellant.

*Mr. William Clark*, for respondent.

The opinion of the court was delivered by

BEASLEY, C. J.

Anna Lawrence, the respondent, in her bill exhibited in the court below, alleged that, one Emson being largely in her debt,

she employed William Warwick, the appellant, as her agent: to collect the moneys so due, and that in pursuance of such authority he received the sum of $952.30, which it was agreed he should hold in his hands until the determination of a suit then pending.    The bill further alleged that the suit so referred to was decided in her favor, and that thereby she became entitled to the moneys in question.    The answer of Warwick admits the receipt of the sum above mentioned, and, by way of defence, sets up that the complainant and her husband, at the time he, Warwick, undertook said agency, agreed in writing that he "should take out of and retain from the first moneys that he should receive for them a sufficient amount to pay and satisfy him for all moneys loaned or advanced by him, or expended by him for them or either of them."    This agreement was duly proved, and it was also shown that Warwick had advanced or paid for the complainant and her husband an amount of money in excess of the sum which had been received by the appellant from the said Emson, such outlays having been made for the most part for the husband of the complainant.

The vice-chancellor, on the hearing before him, allowed a deduction from the moneys in the hands of Warwick of the sums paid by him to the complainant, but rejected the payments made by him for her husband, the ground of decision being that the separate estate of the wife could not be charged with the debts of the husband, even though the moneys be advanced upon an express promise in writing to pay out of a particular fund.

In avoidance of the force of the legal rule thus asserted, the counsel of the appellant insists that the evidence shows that the moneys received by Warwick, as already stated, were not, in point of fact, the moneys of Mrs. Lawrence, but belonged jointly to her and her husband; but it is obvious that if we assume the existence of such premises, only a half defence would be conceded, for if the wife owned a moiety of the fund, such portion would be protected against her assumptions of the debts of her husband in the same manner that the whole fund.

would have been protected if she had been invested with the exclusive ownership of it.

But we think, looking somewhat deeper into the principle underlying the case, that the complainant is not entitled to recover any part of these moneys. Construing the facts most favorably to the complainant, and regarding the fund in question as her exclusive property, the transaction, in substance and effect, was an application by her of such moneys in satisfaction of the debts of her husband, and there is nothing in the law of this state that forbids a married woman from making such a disposition of her property. The married women's act authorizes a *feme covert* to acquire and hold property of all kinds, and invests her completely with the *jus disponendi*. It is also declared that she shall have the right to bind herself by contract in the same manner and to the same extent as though she were unmarried, such latter power being restricted by the proviso that "nothing in this act contained shall enable such married woman to become an accommodation · endorser, guarantor or surety, nor shall she be liable on any promise to pay the debt, or answer for the default or liability of any other person."

From this quotation, it is obvious that the agreement of the complainant touching the employment of her moneys in liquidation of the debts of her husband, so long as the same remained executory, could not have been enforced against her either at law or in equity. Such an agreement was a promise to pay the debt of another out of a particular fund, and the statute in express terms withholds from her the power to assume such an obligation. But there is another constituent of this case which appears to have been overlooked by the court below and by the counsel, and that is the fact that when this bill was filed the agreement of the complainant had been for a long time completely executed ; the moneys in question had been collected by Warwick, and by virtue of the agreement of the complainant had been applied in payment of the debts due from her and from her husband, and the question to be decided, therefore, is whether after such complete execution of her contract she can abrogate her consent and reclaim the moneys.

We see nothing in the statute nor in the general principles of jurisprudence that appears to indicate the existence of a power so unnecessary for the reasonable protection of the married woman, and which would be so liable to abuse. A married woman cannot bind herself to pay the debts of another, but she can pass over her money or property for that purpose, and it cannot reasonably be contended that after the doing of that act she can at will avoid it. In the present instance, Mrs. Lawrence, the complainant, could at any time before the receipt of these moneys by Warwick have revoked his authority, on the basis of its not being binding upon her as long as it was executory; but by permitting it to remain in full force until after the collection had been made and the funds applied to the payment of the debts of her husband, such payments became her payments, and she cannot now repudiate them. The difference between the executory contract of a married woman and one that is executed is illustrated in the case of a bond and mortgage given by her to secure the debt of another person: the contract in the bond, being executory, cannot be enforced against her, but the conveyance by the mortgage being executed, her title can be foreclosed in equity, as has been frequently decided by the courts of this state.

The result, therefore, is that, inasmuch as the moneys in suit were received by Warwick and applied by him with the consent of the complainant to the payment of the debts of her husband, they cannot be reclaimed by the complainant.

The decree must be reversed, and the bill dismissed, with costs in both courts.

It is proper to say that the suit may not be a precedent; that the bill in this case should not have been entertained. The controversy was a purely legal one, and should have been tried in a court of law.

*Decree unanimously reversed.*